In the Matter of the Judicial Settlement of the Accounts of CORNELIUS J. SACKETT, as Executor, etc., of EMMA B. RAPLEE, Deceased.

J. NELSON JONES and MARGARET J. STEVENSON, Appellants; CORNELIUS J. SACKETT, as Executor, etc., of EMMA B. RAPLEE, Deceased, Respondent.

Fourth Department, June 28, 1939.

*Wilbur F. Knapp,* for the appellants.
*James M. Ryan,* for the respondent.

CROSBY, J.  We have here two appeals; one from a decree of the Surrogate's Court disallowing two certain claims made against the estate of the testatrix, and the other from an order denying a motion for a new trial on the ground of newly-discovered evidence.  We think the surrogate was quite right in denying the motion for a new trial on the ground of newly-discovered evidence.  It appears from the moving papers that the so-called newly-discovered evidence is to come from two witnesses produced by claimants on the trial already had; one of those witnesses is the husband of one of the claimants, and the other a maid who has lived and worked in the household of the claimants for many years.  The witnesses are friendly.  There is no excuse whatsoever for the failure to elicit from those witnesses the proof which claimants now want to make by aid of their further testimony.

Claimants offer one other reason why they should have a new trial, namely, that on the trial already had they were advised that each claimant was an incompetent witness to testify in support of the other's claim, and that they are now advised to the contrary. Regardless of which advice is correct, it is obvious that litigants cannot have a second trial merely because their case was tried on a wrong theory.

However, there should be a new trial for another reason.  The decree, disallowing the claims, is against the weight of the evidence.

The claimants are brother and sister living together.  On April 30, 1934, decedent executed and delivered two promissory notes, one payable to the claimant Mr. Jones for $2,500, and one payable to the claimant Mrs. Stevenson for $4,000.  Each note recites that it is given " for value received."  Upon the trial claimants produced several witnesses, and the executor produced none.  The claims were resisted on two grounds: (1) That the signatures to the notes were not those of the testatrix, and (2) that the notes were unsupported by any consideration.  The surrogate decided that the notes bore the genuine signatures of the testatrix, but reached the conclusion, on the whole record, that the notes were without consideration, and a mere promise to make a present.  We think that conclusion is unsupported by the weight of evidence.

The notes were in the possession of claimants.  Had they merely put them in evidence, after proving that the signatures were genuine, there would have been a presumption of consideration which the executor would have had to overcome.  But it developed from the testimony of claimants' own witnesses that testatrix on delivering the notes said: " Your uncle Miles' money is pretty near gone and that is why I am giving you those."  Then it developed that " uncle Miles " had bequeathed an estate to the testatrix for life with the power to consume the corpus, and that claimants were

among the remaindermen. The surrogate took the view that, since the right of claimants to take anything under the will of " uncle Miles " was only a contingent right that could be defeated by the exercise, by testatrix, of her right to use the whole estate, it necessarily followed that the notes were not given for a consideration. Stress is also laid upon the use by testatrix of the verb " give "— " that is why I am *giving* you those [notes]." The word " give " as commonly used, does not necessarily connote " donation." It often means " deliver." It would not be unusual for one to say, " loan me $100 and I will *give* you my note."

It appears that testatrix also said that she was " giving " to claimants the notes for " all you have done for me." It is argued by the executor, and it was stressed in the surrogate's decision, that the last-quoted words might refer only to friendly acts of kindness such as one relative might expect from another. But, on the other hand, they might mean loans of money or the performance of services beyond little acts of friendship.

We reach the conclusion that not enough was shown to overcome the presumption of consideration that is created by the terms of the notes themselves.

The law is clear that, where a negotiable instrument recites a consideration, the presumption of consideration is not destroyed by a futile attempt to show actual consideration (*Durland* v. *Durland*, 153 N. Y. 67; *Lasher* v. *Rivenburgh*, 191 App. Div. 676) unless the attempt to prove actual consideration results in showing clearly and conclusively that there was no actual consideration. (*Dougherty* v. *Salt*, 227 N. Y. 200.) (See, also, *Matter of Barker*, 279 N. Y. 449.)

This record does not justify a finding that the presumption of consideration was overcome by proof elicited from claimants' own witnesses.

While this court has power to decide the case on the record before it (Surr. Ct. Act, § 309), we feel that the interests of justice will be best served by a trial *de novo* in Surrogate's Court.

The decree should be reversed on the facts, with costs, and the matter remitted to the Surrogate's Court for further proceedings in accordance with this opinion.

The appeal from the order should be dismissed, without costs, as academic.

All concur. Present — SEARS, P. J., CROSBY, LEWIS, TAYLOR and DOWLING, JJ.

Decree reversed on the facts and a new trial granted, with costs to the appellants payable out of the estate to abide the event. Appeal from the order dismissed, without costs, as academic.